# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Damon John White Bird Solgado, | ) |
| Petitioner, | ) |
| | ) **ORDER RE PENDING MOTIONS** |
| vs. | ) |
| | ) Case No. 1:17-cv-56 |
| Colby Braun, Warden, NDSP, | ) |
| Respondent. | ) |

Before the court is a petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner, Damon John White Bird Solgado ("White Bird"). (Doc. No. 2). Also before the court is a Motion to Dismiss by respondent, Colby Braun ("the State"). (Doc. No. 12). For the reasons set forth below, the petitioner's writ of habeas corpus is dismissed and the respondent's motion is granted.

## I.  BACKGROUND

### A.  Trial

On April 2, 2013, White Bird was charged with attempted murder, a class A felony, two counts of felonious restraint, class C felonies, aggravated assault, a class C felony, and tampering with physical evidence, a class A misdemeanor. (Doc. No. 11-1). On August 5, 2013, a jury found White Bird guilty of all charges. (Doc. No. 11-1). White Bird was sentenced to ten years in prison, with two five year terms to run consecutively.[1]

### B.  Direct Appeal

White Bird appealed to the North Dakota Supreme Court on December 20, 2013. (Doc. No.

---

[1] White Bird was sentenced to concurrent terms of imprisonment for the other two charges. (Doc. No. 11-1).

11-1). In that appeal, White Bird argued: (1) he was not competent to waive his right to counsel; (2) he did not receive a fair trial because the state district court did not limit the evidence he introduced at trial; and (3) there was insufficient evidence to sustain his convictions. State v. White Bird, 2015 ND 41, 858 N.W.2d 642 ("White Bird I") (Doc. No. 8). The North Dakota Supreme Court affirmed White Bird's conviction, concluding: (1) the state district court did not err in concluding White Bird was competent to waive his right to counsel; (2) the state district court did not err in not limiting evidence White Bird presented; and (3) sufficient evidence supported his convictions.

### C. State Postconviction Proceedings

White Bird next filed an application for postconviction relief on December 6, 2015. (Doc. No. 11-9). In his forty-eight page application, White Bird set forth seven grounds for relief. (Doc. No. 11-10). Although not necessarily styled in this fashion, White Bird essentially alleged: (1) an unconstitutional search and seizure occurred at his apartment; (2) White Bird was convicted with evidence obtained pursuant to an unlawful arrest; (3) White Bird was convicted in violation of his right to avoid self-incrimination; (4) the prosecution committed a Brady violation; (5) White Bird was denied effective assistance of counsel during trial and appeal; (6) White Bird was denied the right to appeal his conviction; and (7) White Bird was convicted through use of a coerced confession.

The state district court denied the application. (Doc. No. 11-10). After the State moved for reconsideration, the court vacated its order as to the issue of whether White Bird received ineffective assistance of appellate counsel. (Doc. No. 11-10). After an evidentiary hearing limited to that issue, (Doc No. 11-11), the court again denied White Bird's petition. (Doc. No. 11-12).

White Bird appealed that order on January 21, 2016. (Doc No. 11-9). Of the fifteen issues raised by White Bird on appeal, the majority focused on the conduct of his appellate counsel,

particularly with counsel not raising all the issues White Bird wanted. (Doc. No. 11-13). On August 26, 2016, the North Dakota Supreme Court affirmed the state district court's order denying White Bird's application. White Bird v. State, 2016 ND 47, 882 N.W.2d 727 ("White Bird II") (Doc. No. 15). The court concluded White Bird's appellate counsel's performance fell within prevailing professional norms and White Bird did not suffer any prejudice. The court also concluded the state district court did not err in limiting White Bird's claim to the effectiveness of his appellate counsel.

### D. Federal Habeas Petition

White Bird next filed his § 2254 petition with this court on March 30, 2017. (Doc. No. 2). White Bird's forty-two page petition contains six grounds for relief. In ground one, White Bird alleges he was denied his right to effective assistance of trial counsel when the state district court refused to appoint him a new court-appointed attorney. In ground two, White Bird alleges he was the victim of an unconstitutional search and seizure that occurred when authorities acted outside the scope of a search warrant. In ground three, White Bird alleges the state district court violated his right to compulsory process when the court excused a witness subpoenaed by White Bird. In ground four, White Bird alleges he did not receive a fair trial when the alleged victims displayed scars to the jury and White Bird's standby counsel did not object. In ground five, White Bird alleges the state district court violated his equal protection rights when it limited the postconviction proceeding to the issue of whether White Bird received ineffective assistance of appellate counsel. In ground six, White Bird essentially alleges there was insufficient evidence to support his convictions.

### E. Evidence Supporting White Bird's Conviction

The following factual summary, taken verbatim from the North Dakota Supreme Court's decision on direct appeal in White Bird I, at ¶¶ 2-6, provides context in evaluating this petition:

[¶2] In April 2013, Fargo Police officers investigated two separate violent assaults on two victims, which occurred between twelve to eighteen hours apart at the same location, White Bird's apartment. On the basis of the investigation, White Bird was subsequently charged with attempted murder, a class A felony; two counts of felonious restraint, class C felonies; tampering with physical evidence, a class A misdemeanor; and aggravated assault, a class C felony. White Bird made his first appearance in the district court on April 5, 2013, and he applied for and was appointed a public defender.

[¶3] On April 30, 2013, on the basis of a defense motion, the district court ordered White Bird committed to the North Dakota State Hospital to evaluate his fitness to proceed and criminal responsibility. A psychologist at the State Hospital evaluated White Bird and prepared two reports, which were both filed with the court on June 10, 2013. White Bird was found both fit to proceed and criminally responsible. In June 2013, White Bird and his attorney appeared at the preliminary hearing. White Bird waived his preliminary hearing and pled not guilty to all of the charges.

[¶4] In July 2013, White Bird filed a document in which he fired his attorney and moved to dismiss the case. On July 24, 2013, the district court held a hearing at which White Bird's attorney said White Bird had fired him and wanted to represent himself. His attorney raised the issue of White Bird's ability to represent himself. The court then discussed with White Bird his decision to represent himself. White Bird said he did not believe his appointed counsel was giving him an "adequate defense." The court continued discussing the issue with White Bird, but White Bird did not change his mind, insisting on representing himself. The court informed him that trial was only six days away, and he would have to subpoena his witnesses and be ready to try his case.

[¶5] At another pretrial hearing on July 26, 2013, the district court again addressed White Bird's desire to represent himself. The hearing ended with White Bird's consenting to permit his appointed counsel to represent him. However, on July 29, 2013, the day before trial, at the final pretrial hearing, White Bird again insisted that he wanted to represent himself. The court again discussed with White Bird the dangers of self-representation and his decision to fire his appointed counsel. The court allowed White Bird to represent himself and appointed his former attorney as standby counsel. The court also denied White Bird's motion to dismiss.

[¶6] At the five-day jury trial in late July and August 2013, White Bird represented himself with limited assistance of standby counsel. The jury found White Bird guilty on all five counts. In October 2013, White Bird moved for an evidentiary hearing, alleging he was not competent to waive his right to counsel. At a November 2013 hearing, the court denied White Bird's motion and sentenced him.

## II.   GOVERNING LAW

### A.   Scope of Review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law. However, where the state court has adjudicated the federal claim on the merits, this court's review is limited by 28 U.S.C. § 2254(d) to a determination of whether the state court's decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d); see generally Harrington v. Richter, 562 U.S. 86, 97-100 (2011) ("Richter"); Williams v. Taylor, 529 U.S. 362, 399-413 (2000). This highly deferential standard of review is often referred to as "AEDPA deference" because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766, 773 n.1 (2010). The reasons for the limited review are ones of federalism and comity that arise as a consequence of the state courts having primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Richter, 562 U.S. at 103.

### B.   Exhaustion Requirements

The exhaustion doctrine codified at 28 U.S.C. § 2254(b)-(c) precludes granting habeas relief for claims that have not been properly exhausted in the state courts. E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). Proper exhaustion has two components. First, the claim must be "fairly presented," which requires that the petitioner present both the factual and legal premises for the claim, with the latter being satisfied if there is a reference

to the particular federal constitutional right or a citation to a state or federal case that raises the constitutional issue. Dansby v. Norris, 682 F.3d 711, 722-23 (8th Cir. 2012), vacated on other grounds, Dansby v. Hobbs, No. 12-8582, 2013 WL 506561 (U.S. June 3, 2013); Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007). Second, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addition, there are three other aspects of the exhaustion doctrine that are important. The first is that the exhaustion doctrine is satisfied if there are no state-court remedies available and exhaustion would be futile, such as when the claim has been procedurally defaulted at the state-court level. E.g., Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005). The second is that Rose v. Lundy, 455 U.S. 509 (1982), prohibits a petitioner from proceeding with a "mixed petition" of exhausted and unexhausted claims. See also Rhines v. Weber, 544 U.S. at 273-74. The third is that § 2254(b)(2) authorizes the court to deny a claim on the merits notwithstanding a failure to exhaust. E.g., Gringas v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008).

C.    Procedural Default

A federal district court is precluded from substantively considering a habeas claim that has been procedurally defaulted at the state level on independent and adequate state grounds. E.g., Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). State procedural grounds are independent and adequate if they are firmly established, readily ascertainable, and regularly followed. Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008); Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007). They must also further a legitimate state interest and not be applied in an exorbitant manner. Barnett, 541 F.3d at 808. The rule barring procedurally-defaulted claims is nearly absolute. Cagle

v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007). The only exceptions are the rare instances when a prisoner is able to meet the strict cause and prejudice or actual innocence standards. E.g., Dretke v. Haley, 541 U.S. 386, 392-93 (2004); Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012).

    D.    State Defenses—Res Judicata, Misuse of Process, & Statute of Limitations

Under N.D.C.C. § 29-32.1-12, res judicata and misuse of process are affirmative defenses in state proceedings for postconviction relief. Res judicata is defined in subsection (1) to be a claim that was fully and finally determined in a prior proceeding. Misuse of process is defined in subsection (2)(a) to include any "claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to a judgment of conviction and sentence or in a previous postconviction proceeding[.]" As an additional defense, N.D.C.C. § 29-32.1-01(2) requires applicants for postconviction relief to file their application within two years of the date of their conviction becoming final, unless a specific exception applies. These procedural defenses are regularly enforced by North Dakota courts. E.g., Eagleman v. State, 2016 ND 54, 877 N.W.2d 1; Tweed v. State, 2011 ND 228, ¶ 12, 807 N.W.2d 599; Steen v. State, 2007 ND 123, ¶¶ 13-17, 736 N.W.2d 457; Laib v. State, 2005 ND 187, ¶¶ 6-7, 705 N.W.2d 845.

## III.    DISCUSSION

From the outset, the court recognizes the State argues a number of White Bird's claims are unexhausted and should be dismissed on that basis. These arguments appear to have merit with respect to a number of White Bird's claims. However, the court will bypass this preliminary issue and address the merits of White Bird's claims, as allowed for under § 2254(b)(2).

    A.    Ground One: Right to Effective Assistance of Counsel

White Bird's first ground for relief alleges the state district court denied his Sixth

Amendment right to effective assistance of trial counsel. Following his charging, White Bird applied for and received court-appointed counsel. White Bird fired this court-appointed counsel approximately two weeks prior to trial. (Doc. No. 11-18 p. 2). As gleaned from the numerous conversations before the state district court, White Bird was apparently dissatisfied with the amount of time he thought his counsel had devoted to the case, specifically that counsel had not made any motions on White Bird's behalf. At a hearing on the matter, White Bird informed the presiding judge he would represent himself. (Doc. No. 11-18 p. 3). The presiding judge repeatedly tried to dissuade White Bird from that decision. The presiding judge again admonished White Bird about the pitfalls of self-representation two days later, to no avail. (Doc. No. 11-19).

At the final pretrial conference, the court again admonished White Bird about self-representation. (Doc. No. 11-20). The judge informed White Bird that he had two options. The court instructed White Bird "the first option is to represent yourself and to act as your own attorney . . . ." (Doc. No. 11-20 p. 4). The court continued "option two is to allow [counsel] to proceed as your attorney and to do all of those things on your behalf as a team." (Doc. No. 11-20 p. 4). White Bird told the presiding judge he understood these two options and "I will choose number one." (Doc. No. 11-20 p. 5). The presiding judge told White Bird, "I am very sorry to hear you state this is your desire. I think it is a huge mistake. . . But you have the absolute constitutional right to try to represent yourself, so if you're insisting on doing that that's what is shall be," to which White Bird responded, "I insist." (Doc. No. 11-20 p. 5). White Bird then represented himself at trial.

On the foregoing, White Bird alleges he was denied his right to effective assistance of counsel. White Bird's first ground for relief, in relevant part, states:

> When trial court failed to appoint new effective representation for White Bird, White

> Bird chose to represent himself at trial, at which time, the trial court proceeded to assign [trial counsel] to the case only as stand by counsel. White Bird was denied his right to having competent and effective trial representation. White Bird was also denied his right to having [sic] lawyer of his choice as 6th Amendment right entails.

(Doc. No. 2 p. 15). This ground is capable of being construed in multiple ways. White Bird's claim becomes clearer when read in light of his briefing. (Doc. No. 14 pp 3-7). White Bird alleges the state district court denied him his right to counsel when it told White Bird he could either proceed with appointed counsel, whom White Bird alleges was ineffective, or represent himself. (Doc. No. 14 p. 5); (Doc. No. 2 p. 15); (Doc. No. 14 p. 6). Left with these choices, White Bird alleges he had no choice but to proceed pro se, resulting in a deprivation of his constitutional right to counsel.[2]

White Bird's claim expresses what the Eighth Circuit has described as the "Hobson's choice" regarding court-appointed counsel. Under this situation, a defendant with court-appointed counsel "must choose between continued representation by a lawyer in whom he had lost all trust or proceeding pro se with that same attorney serving as standby counsel." United States v. Webster, 84 F.3d 1056, 1062 (8th Cir. 1996); United States v. Blum, 65 F.3d 1436, 1442 (8th Cir. 1995) (further noting a "Hobson's choice has been defined as something one must accept through want of any real alternative."). Numerous federal courts "have expressly approved a district court's decision to require the defendant to either continue with appointed counsel or proceed pro se with that same lawyer acting as a standby attorney." Webster, 65 F.3d at 1064. If the defendant opts for the latter, such pro se representation does not necessarily violate the defendant's constitutional right to counsel. Id. "While the 'Hobson's choice' between proceeding to trial with an unprepared counsel or no

---

[2] White Bird's claim is simply incorrect when he argues the state district court "denied his right to [have a] lawyer of his choice as [the] 6th Amendment right entails." United States v. Gonzalez-Lopez, 548 U.S. 140, 152 (2006) (noting "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them.").

counsel at all may violate the right to counsel, there is no constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation." United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006) (internal citations omitted); see also Blum, 65 F.3d at 1442 (noting a deprivation of counsel does not occur when court-appointed counsel provides the defendant with a "real alternative" to self-representation).

The record before the court clearly establishes White Bird was not presented with any Hobson's choice that might run afoul with his constitutional right to counsel. White Bird's court-appointed counsel was a seasoned criminal defense attorney with over thirty years experience. (Doc. No. 11-19 p. 21). Prior to trial, White Bird's counsel negotiated a plea deal for White Bird, which he rejected. (Doc. No. 11-18 p. 2). Counsel also made further arrangements in preparation for trial. (Doc. No. 11-18 p. 19). In the days leading up to trial, counsel indicated he spent a considerable amount of time preparing for trial. (Doc. No. 11-20 p. 2). After being dismissed as counsel, trial counsel remained in a standby capacity and, from the trial transcript, actively engaged with White Bird on how to present his case. White Bird has not pointed to anything indicating his counsel was unprepared to handle his case. While White Bird complains of his counsel not filing any pretrial motions on his behalf, White Bird also does not identify what motion White Bird wanted trial counsel to file and how that motion would have impacted his case. On the record before the court, White Bird was afforded a real alternative to representing himself at trial. White Bird has not shown he was denied his constitutional right to counsel and his first ground for relief is dismissed.

B. Ground Two: Unconstitutional Search and Seizure

In ground two of his petition, White Bird alleges officers committed an unconstitutional search of his apartment by exceeding the scope of a search warrant. Although neither the State nor

White Bird has submitted this search warrant, officers obtained and executed a search warrant for White Bird's apartment. As alleged in White Bird's petition, this search warrant was limited to seeking evidence regarding indicia of residency. Despite finding evidence of his residency, at which point White Bird argues they should have ended their search, White Bird alleges the officers seized his bank records. Because they allegedly exceeded the scope of their search warrant, White Bird argues the officers committed a violation of the Fourth Amendment, entitling him to habeas relief.

Assuming that the officers committed a Fourth Amendment violation by exceeding the scope of the search warrant, White Bird is not entitled to habeas relief. The Supreme Court has limited a court's ability to adjudicate Fourth Amendment claims in habeas proceedings, mandating that, where "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494-95 (1976). Here, White Bird has not alleged, much less proved to any reasonable degree of satisfaction, he was denied the opportunity to contest the validity of the search during the state court proceedings. White Bird's second claim is little more than an attempt to litigate an issue that should have been raised and adjudicated with the state courts. Because the claim falls outside the scope of allowable habeas claims, the court dismisses White Bird's claim on that basis.

White Bird's second claim also fails because any prejudice that may have resulted from the allegedly unconstitutional search was invited. Absent from White Bird's petition are the circumstances surrounding introduction of White Bird's bank records at trial. Before trial, the State disavowed any intention of introducing the bank records at trial. (Doc. No. 11-23 p. 150) (stating "We're not going to get into his bank records or anything like that. I cannot see how it's relevant.").

The bank records ended up before the jury only because White Bird *himself* introduced the records into evidence. (Doc. No. 11-25 p. 81). Any prejudice resulting from introduction of records illegally seized was attributable to White Bird, not the State. White Bird cannot complain of any error he invited at trial. Druery v. Thaler, 647 F.3d 535 (5th Cir. 2011); see also Fields v. Bagley, 275 F.3d 478, 486 (6th Cir.2001) ("When a Petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error."); Parker v. Champion, 148 F.3d 1219, 1221–22 (10th Cir.1998) (noting that habeas relief on the basis of an invited error is precluded); Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir.1993) (en banc) ("Even if we were to find such error in the trial of this case in the state court, the error was invited and therefore cannot form the basis for habeas corpus relief."). White Bird's second claim for relief is dismissed.

### C.  Ground Three: Fair Trial, Compulsory Process, Due Process

White Bird's third ground for relief relates to ground two in that he faults the state district court for not allowing testimony regarding the seized bank records. White Bird subpoenaed a bank representative to testify on his behalf at trial. (Doc. No. 11-23 p. 148). After the state district court asked what relevant testimony the bank representative could offer, White Bird responded: "My bank records were seized, were illegally seized. She can testify that the Fargo P.D. never came to Wells Fargo with the search warrant indicating the search and seizure of my bank records." (Doc. No. 11-23 p 149). According to White Bird, the bank representative had "already seen some of my work that I came back from Buffalo Wild Wings, all my checks and everything. She helped me deposit $311.00." (Doc. No. 11-23 p. 149). White Bird further elaborated she could "testify that the Fargo P.D. never came to Wells Fargo with the search warrant indicating the search and seizure of my bank records." (Doc. No. 11-23 p. 149). After the State indicated it would not offer the records, the

-12-

district court concluded the bank representative would not provide any relevant testimony. (Doc. No. 11-23 p. 152). The court then released the bank representative from White Bird's subpoena. (Doc. No. 11-23 p. 152). White Bird argues this dismissal violated his right to a fair trial, compulsory process, and due process.

Although couched in terms of fair trial and due process, White Bird's third ground is essentially a compulsory process claim. The Eighth Circuit has said:

> The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall enjoy the right to ... have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The right to compulsory process is not absolute. Both the Sixth Amendment compulsory process and the Fifth Amendment due process clauses require that a defendant show that the witness "testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 872, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Material testimony is testimony that might affect the outcome of the trial. See id. at 868, 102 S.Ct. 3440.

United States v. Luvene, 245 F.3d 651, 654 (8th Cir. 2001). The burden rests with the party complaining of the compulsory process violation to show how the sought testimony would be both material and favorable to their case. Id.

Neither White Bird's habeas petition nor his brief in opposition to the State's motion to dismiss provide any cogent argument for how a violation of compulsory process occurred. Giving White Bird the benefit of even the most charitable of interpretations, any testimony to be elicited from the bank representative would not have been material nor favorable because it was simply irrelevant. White Bird has not indicated the bank representative had any knowledge of the events that occurred on the night giving rise to the charges. She could not have testified as to the sobriety of any of the individuals involved, she could not have testified as to who was present in White Bird's apartment at the time of the alleged incidents, she could not have testified as to who was the first

aggressor, and the list goes on and on. How much money White Bird had in his bank account or whether the bank had been served with a search warrant for that account are simply irrelevant to the issues for disposition in White Bird's case. White Bird has not come close to carrying his burden of showing how the testimony he sought would have changed the outcome of his trial, as is necessary for him to make out a claim for violation of compulsory process. Luvene, 245 F.3d at 654. For that reason, White Bird's third claim for relief is dismissed.

      D.      Claim Four: Right to Fair Trial and Ineffective Assistance of Standby Counsel

Although fashioned as a claim for violation of "White Bird's right to fair trial by jury," White Bird's fourth claim seemingly raises two distinct claims. First, White Bird argues he was denied a fair trial when the state district court allowed the two victims to show the jury scars allegedly inflicted by White Bird's assault. Second, White Bird argues his standby counsel was ineffective for failing to object to the State's request to show the victims' scars in the flesh.

After being fired by White Bird, his court-appointed counsel remained in the courtroom in a standby capacity. The state district court made clear to White Bird that, in that capacity, counsel would not sit with White Bird at the defense table, nor would he provide any representation at trial. (Doc. No. 11-23 pp. 18-19). The court informed White Bird he could consult with standby counsel during breaks in the trial, otherwise counsel was to have no role at trial. (Doc. No. 11-23 pp. 18-19).

During trial, the State called both of the alleged victims to testify. During both of these testimonies, the State asked the alleged victims to show the jury scars they allegedly received as a result of White Bird's assault. (Doc. No. 11-23 pp. 49, 129) When asked whether he objected to this presentation, White Bird stated he had no objection. (Doc. No. 11-23 p. 49). The alleged victims proceeded to remove clothing and show the jury their scars.

-14-

In support of his fair trial violation claim, White Bird alleges "a violation of ones [sic] right to a fair trial occurs when a testifying witness is allowed to physically leave the witness stand at trial to engage in a showy parade of their injuries to the jury. . . ." (Doc. No. 14 p. 17). This claim fails on multiple levels. As noted above, White Bird did not object to allowing the victims to show their scars, meaning any harm stemming from the allowance of such evidence was invited. This invited error is all the more apparent when considering White Bird himself asked one of the victims to again show the jury the scars. (Doc. No. 11-23 p. 53) ("please show us where you were stabbed. Right here, right? So that's three times in your leg, correct?"). White Bird cannot complain about the state district court allowing the State to show the victims' injuries to the jury when White Bird himself requested at least one of the victims do the same.

Setting that issue aside, White Bird has not alleged, nor shown to any reasonable standard, how he suffered prejudice, specifically how his trial would have turned out differently sans this presentation. White Bird correctly notes certain failures, whether procedural or substantive, may be so prejudicial that it taints a trial so that it is no longer a fair proceeding within the meaning of the constitution. Holbrook v. Flynn, 475 U.S. 560, 570 (1986). This is not one of those instances. Absent from White Bird's claim is that the State, without objection from White Bird, introduced multiple photographs of the alleged victims' injuries into evidence. (Doc. No. 11-23 pp. 23-25, 82-83). White Bird has not provided any reasonable explanation for how he suffered prejudice by presenting the victims' scars in the flesh when photographs of those same scars were before the jury. On the foregoing, to the extent White Bird's fourth ground for relief raises the issue, White Bird's trial was not unfair simply because the jury viewed the victims' scars in the flesh.

Turning to the second component of this claim, White Bird raises, what is in essence, a claim

for ineffective assistance of standby counsel. White Bird alleges he "was unable to make any reasonable objections as White Bird not only relied on Stand By Counsel's vast legal experience to help White Bird obtain the most favorable outcome at trial, but it was also the duty of Stand By counsel to safe guard White Bird's 6th Amendment Constitutional right to effective assistance of counsel . . . ." (Doc. No. 2 p. 21). White Bird elaborates: "when standby counsel failed to instruct White Bird to object to objectionable actions undertaken by the state at trial, which were the duties of standby counsel, standby counsel's inaction amounted to a constitutional ineffective assistance of counsel claim." (Doc. No. 14 p. 18). White Bird's claim fails because the Eighth Circuit has instructed that an ineffective assistance of counsel claim cannot lie on the conduct of standby counsel. United States v. Foster, 230 F.3d 1364 (8th Cir. 2000); see also Jones-El v. Wallace, No. 4:13-CV-85-SPM, 2016 WL 1258632 at *10 (E.D. Mo. March 31, 2016) (relying on Foster for the principle "there is no constitutional right to effective assistance of standby counsel."); United States v. Arafat, No. 12-cr-45 (SRN/JJG), 2014 WL 457906 at *3 (D. Minn. February 4, 2014) (relying on Foster in holding, "having chosen to represent himself, Defendant cannot rely on an assertion that his standby counsel is inadequate, because Defendant has no constitutional right to standby counsel."). By electing to represent himself, White Bird cannot now complain about his standby counsel's actions or inactions, rendering his fourth claim unfounded.[3]

  E. <u>Claim Five: Equal Protection</u>

In ground five, White Bird alleges the state district court violated his equal protection rights

---

[3]White Bird's allegations in his current petition are contrary to his professed understanding at trial. The state district court repeatedly informed White Bird that his self-representation required him to make his own objections when appropriate. (Doc. No. 11-18 p. 10); (Doc. No. 11-20 pp. 4, 14, 23, 36). White Bird cannot complain of standby counsel's failure to object when White Bird was fully apprised standby counsel would not be permitted to do so.

in how it conducted a December 28, 2015, evidentiary hearing. (Doc. No. 11-11). As discussed above, White Bird filed his application for postconviction relief and the state district court denied the application except for his claim for ineffective assistance of appellate counsel. The state district court then conducted an evidentiary hearing limited to that issue. White Bird takes exception with this limitation, alleging he should also have been able to present evidence as to the ineffectiveness of his trial counsel and this limitation amounted to a violation of his equal protection rights.

White Bird's fifth claim for relief is fundamentally flawed in that it does not present a cognizable claim for habeas relief. As noted by Eighth Circuit in Kenley v. Bowersox, 228 F.3d 934 (8th Cir. 2000) judgment vacated on other grounds by 234 F.3d 1339 (8th Cir. 2000):

> Indeed, this Circuit has long recognized that truism, holding on several occasions that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings. As we noted in Williams v. State, 640 F.2d 140, 143-44 (8th Cir.), cert. denied, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981), "[I]nfirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction.... Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings." See also Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.) (holding that § 2254 petitioner's claim that state post-conviction court's failure to make findings on allegation that prosecution withheld discovery "is collateral to appellant's conviction and detention, and is therefore not cognizable in a 28 U.S.C. § 2254 petition"), cert. denied, 495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990); Smith v. Lockhart, 882 F.2d 331, 334 (8th Cir.1989) (quoting Williams in holding challenges to failure to hold state post-conviction hearing and to lack of written findings were not cognizable), cert. denied, 493 U.S. 1028, 110 S.Ct. 739, 107 L.Ed.2d 757 (1990).

Id. at 938-39. By alleging an equal protection violation during the state postconviction proceeding, White Bird does not attack the constitutionality of his current detention. Rather, this claim solely presents an issue collateral to his detention, which the Eighth Circuit has made clear is not cognizable in a § 2254 proceeding. Kenley, 228 F.3d at 938-39. Accordingly, White Bird's fifth claim for relief is dismissed as falling outside this court's habeas review.

F. Ground Six: Insufficiency of the Evidence

White Bird's final ground for relief is rather convoluted. He begins by alleging the State engaged in prosecutorial misconduct at trial. However, the lion's share of the claim appears to argue there was insufficient evidence to justify his convictions. Throughout the claim, White Bird alleges officers either fabricated evidence used at trial or there were conflicting eye witness accounts of what occurred on the night of the alleged crimes. White Bird concludes by requesting the court "issue an order for judgment of acquittal on all counts, finding [the] State failed to prove its case as insufficient evidence is overwhelming." (Doc. No. 2 p 41).

As is relevant to this claim, and as discussed above, habeas relief is only available when a conviction was obtained based upon an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d); see also Evans v. Luebbers, 371 F.3d 438, 441-42 (8th Cir. 2004) (in considering insufficiency of the evidence claims, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). The court must also "presume that the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence." Evans 371 F.3d at 442.

White Bird raised a similar argument to the North Dakota Supreme Court on direct appeal. The court rejected the argument, concluding:

> [¶ 29] Here White Bird moved for acquittal under N.D.R.Crim.P. 29. The jury found White Bird guilty of attempted murder, two counts of felonious restraint, aggravated assault, and tampering with physical evidence. On the basis of our review, we conclude evidence was presented to support White Bird's convictions. Both physical assault victims testified at trial. One victim testified regarding his extensive injuries as a result of White Bird's assault on him, including White Bird's hitting him with a table leg. Another witness at trial testified that he witnessed the beating and that

during the attack White Bird stated the victim would not leave White Bird's apartment unless he was in a "Bird bag." Both the victim and the witness testified White Bird prevented them from leaving his apartment under circumstances that were threatening or terrorizing. The other victim testified White Bird stabbed him with a sword.

[¶30] White Bird acknowledged at trial that he hid evidence of his crimes on the roof of a nearby downtown building to prevent police from discovering the evidence during the investigation. Additionally, White Bird testified he had hit the one victim with the table leg because he kept coming at him with a knife and stopped hitting him when the victim lost consciousness. White Bird also said he "only" stabbed the other victim twice in the chest and that the sword had gone all the way through, causing four wounds--two entrance wounds and two exit wounds.

[¶31] While contradictory and conflicting testimony was presented at trial, White Bird has the burden of demonstrating the evidence permits "no reasonable inference of guilt" when viewed in the light most favorable to the verdict. [State v. Romero], 2013 ND 77, ¶ 30, 830 N.W.2d 586. Under our deferential standard of review, we conclude there was sufficient evidence to convict White Bird of the charges.

White Bird I, at ¶¶ 29-31.

After reviewing the record, the court agrees with the North Dakota Supreme Court. As to the attempted murder and aggravated assault charges, each of the alleged victims testified White Bird assaulted them with a table leg and/or a sword. As to the felonious restraint charges, each also testified White Bird prevented them from leaving his apartment. As to the tampering with physical evidence charge, White Bird admitted to concealing evidence from the alleged attacks. Although White Bird is correct in noting various witness who testified at trial provided conflicting accounts of what happened, ample testimony and evidence nonetheless support White Bird's convictions. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. White Bird's final ground for relief is dismissed.

**IV.    CONCLUSION**

Based on the foregoing:

1. The State's motion to dismiss (Doc. No. 12) is **GRANTED**.

2. White Bird's § 2254 petition (Doc. No. 2) is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated this 7th day of November, 2017.

                                              */s/  Charles S. Miller, Jr.*
                                              Charles S. Miller, Jr., Magistrate Judge
                                              United States District Court